# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.

            Plaintiff,

      v.                                    Case No. 15-cv-00360 (RBW)

DEPARTMENT OF DEFENSE,
   et. al.

            Defendants.

DECLARATION OF ANTOINETTE B. SHINER
INFORMATION REVIEW OFFICER
FOR THE LITIGATION INFORMATION REVIEW OFFICE
CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

      1.  I currently serve as the Information Review Officer
("IRO") for the Litigation Information Review Office ("LIRO") at
the Central Intelligence Agency ("CIA" or "Agency").  I assumed
this position in January 2016.

      2.  Prior to becoming the IRO for LIRO, I served as the IRO
for the Directorate of Support ("DS") for over sixteen months.
In that capacity, I was responsible for making classification
and release determinations for information originating within
the DS.  Prior to that, I was the Deputy IRO for the Director's
Area of the CIA ("DIR Area") for over three years.  In that
role, I was responsible for making classification and release

1

determinations for information originating within the DIR Area, which included, among other offices, the Office of the Director of the CIA, the Office of Congressional Affairs, the Office of Public Affairs, and the Office of General Counsel. I have held other administrative and professional positions within the CIA since 1986, and have worked in the information review and release field since 2000.

3. I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010). This means that I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations. Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

4. This declaration supports the government's Motion for Summary Judgment in this case. The purpose of this declaration is to provide the Court with a description of the records at issue and to justify the CIA's decision to withhold these documents in full. Through the exercise of my official duties,

2

I have become familiar with this civil action.  I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

PROCEDURAL HISTORY

5.  By letter dated 11 December 2015, plaintiff Judicial Watch requested:  any and all documents, records, and/or communications related to memoranda drafted by Stephen W. Preston, former CIA General Counsel; Mary B. DeRosa, former National Security Council Legal Adviser; Jeh C. Johnson, former Pentagon General Counsel; and then-Rear Admiral James W. Crawford III, former Joint Chiefs of Staff Legal Adviser, regarding options, authority, rationale, details, analysis, legal factors, policy concerns, opinions, and conclusions for the search, raid, capture and/or killing of Osama bin Laden in 2011.  Plaintiff indicated that relevant documents, records and/or communications included, but were not limited to:

a. A memorandum written by former Pentagon General Counsel Jeh C. Johnson concerning any violation of Pakistani sovereignty in seeking, capturing and/or killing Osama bin Laden in 2011;

b. A memorandum written by former CIA General Counsel Stephen W. Preston regarding when the administration must alert congressional leaders about the raid, capture and/or killing of Osama bin Laden in 2011;

c. A memorandum written by former National Security Council Legal Adviser Mary B. DeRosa concerning a Navy SEAL team going into a raid with the intention of killing as a

3

default option during the search, raid, capture and/or killing of Osama bin Laden in 2011;

d. A memorandum written by former National Security Council Legal Adviser Mary B. DeRosa regarding plans for detaining Osama bin Laden in the event of his capture;

e. A memorandum written by former Joint Chiefs of Staff Legal Adviser then-Rear Admiral James W. Crawford III regarding options and/or plans for Osama bin Laden's burial.

A copy of this letter is attached as Exhibit A. During the course of this litigation, plaintiff agreed to limit the scope of its request to the five legal memoranda listed above. The Agency subsequently conducted a search, located five memoranda that the Agency identified as responsive to plaintiff's request, and advised plaintiff that those records were being withheld in full pursuant to FOIA Exemptions 1, 3 and 5.

EXPLANATION FOR FOIA EXEMPTIONS

6. On 1 May 2011, President Obama announced "to the American people and to the world that the United States has conducted an operation that killed Osama bin Laden, the leader of al Qaeda, and a terrorist who's responsible for the murder of thousands of innocent men, women, and children." President Obama further stated that "[t]he death of bin Laden marks the most significant achievement to date in our nation's effort to defeat al Qaeda." Looking back at the raid, the then-General Counsel of the CIA, Stephen W. Preston, gave prepared remarks at

Harvard Law School on 10 April 2012, characterized the operation as "an example of difficult and momentous Presidential decision-making."  The "risks and potential consequences of conducting an operation deep inside Pakistan," he observed, "were enormous, particularly if the operation failed."

7.  Because the risks and the potential consequences associated with conducting a raid on Osama bin Laden's compound in Abbottabad, Pakistan were substantial, the President and his national security team considered a number of variables and carefully weighed different options for the operation.  Top national security lawyers from the CIA, Department of Defense, and the National Security Council formed an integral part of that decision-making process.  During his 2012 Harvard Law School remarks, Stephen Preston explained: "I cannot say the operation was heavily lawyered, but I can tell you it was thoroughly lawyered.  From a legal perspective, this was like other counterterrorism operations in some respects.  In other respects, of course, it was extraordinary.  What counsel concentrated on were the law-related issues that the decision-makers would have to decide, the legal issues of which the decision-makers needed to be aware, and lesser issues that needed to be resolved.  By the time the force was launched, the U.S. Government had determined with confidence that there was clear and ample authority for the use of force, including lethal

5

force, under U.S. and international law and that the operation would be conducted in complete accordance with applicable U.S. and international legal restrictions and principles."

8. The memoranda requested by plaintiff memorialize the confidential legal advice of those attorneys on certain significant legal aspects of the bin Laden raid.  These memoranda are covered in full by the presidential communications privilege under FOIA Exemption 5.[1]  These memoranda are not controlling statements of policy that agencies rely upon in discharging their missions.  Rather, the memoranda memorialize legal advice that was briefed to the President and his closest advisors for the purpose of providing an understanding of the legal implications associated with taking certain courses of action.  This advice served as one consideration, among others, weighed by the President and his national security advisors in advance of the President's decision to authorize the raid on bin Laden's compound.  Here, the secrecy of the operation, and the legal advice associated with it, was of paramount concern and was closely held within the top ranks of the administration. Moreover, although certain details of the raid have been

---

[1] This declaration covers the five memoranda at issue.  In addition, I understand that the Department of Defense is submitting a separate declaration to address the memoranda drafted by the Department of Defense's General Counsel and the Joint Chiefs of Staff Legal Advisor.

acknowledged, the confidentiality of these communications continues to be maintained and has not been disseminated beyond the parties.

9.   For each memorandum, the advice sets forth the factual background relevant to the legal question posed, and analyzes the potential legal consequences of taking a certain course of action in connection with the operation.  This advice is not an authorization to conduct a given activity, but, rather, one step in the Executive branch deliberations - *i.e.*, determining legally available options associated with the then-proposed raid.  The disclosure of these memoranda would undermine the President's ability to obtain frank and informed opinions from his senior advisors.  This concern is acute in the national security context, particularly in situations, such as this one, where the President is formulating a decision on a sensitive operation with substantial foreign policy impacts.

10.  For these same reasons, the memoranda are also protected in full by the deliberative process privilege.  These memoranda are deliberative and pre-decisional because they consist of interim advice and recommendations made in the course of reaching a final Executive Branch decision on whether and how to proceed with the proposed raid.  To the extent there is any factual material, it is part and parcel of the deliberations and cannot be segregated.  The selection of facts in these documents

7

would reveal the preliminary recommendations and opinions preceding the President's ultimate decision, such as the aspects of the operation that the lawyers considered significant.

11. The attorney-client privilege also applies to these memoranda in full as they consist of confidential legal advice conveyed by national security attorneys analyzing different legal issues associated with the proposed operation that was provided to the client – i.e., the President and his closest advisors. As noted above, the confidential nature of these communications has been carefully preserved. Disclosure of legal advice, such as this, would diminish the quality of legal representation provided by government attorneys because clients would be reluctant to freely and accurately communicate factual information, questions, or concerns for fear that those discussions would be publicly disclosed.

12. Additionally, I note that there is discrete information within the documents that is protected by Exemption 1 because it is currently and properly classified and also protected by Exemption 3 in connection with the National Security Act, which protects intelligence sources and methods. Because these documents are being withheld in full on the basis of privilege, and due to the fact that the classified and statutorily protected information cannot be fully described on the public record, the CIA is prepared to submit an *in camera, ex parte*

8

affidavit to describe this material should the Court require it.
However, I note here that these pieces of information meet the
procedural and substantive requirements of Executive Order 13526
and fit within classification categories of sections 1.4(c)
(intelligence sources, methods and activities) and 1.4(d)
(foreign relations or activities).  I have determined that
disclosure of this information could reasonably be expected to
harm national security because it would reveal classified
intelligence activities, sources and methods associated with
counterterrorism operations in a foreign country.

SEGREGABILITY

     13.  In evaluating the responsive documents, the CIA
conducted a document-by-document and line-by-line review and
determined that no segregable, non-exempt portions of these
memoranda can be released without potentially compromising
privileged information.  Accordingly, I have determined that
these memoranda must be withheld in full pursuant to Exemption 5
and, additionally, contain material protected by Exemptions 1
and 3.

*     *     *

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of August 2016.

ANTOINETTE B. SHINER
Information Review Officer
Litigation Information Review
  Office
Central Intelligence Agency

10