## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                           )

JUDICIAL WATCH, INC.,            )
                           )

        Plaintiff,          )
                           )

        v.              )      Civil Action No. 16-360 (RBW)
                           )

UNITED STATES DEPARTMENT   )
OF DEFENSE, et al.,         )
                           )

        Defendants.      )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, Judicial Watch, Inc., filed this civil case, alleging that the defendants, the United States Department of Defense (the "DOD") and the Central Intelligence Agency (the "CIA"), violated the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552 (2012), "by failing to search for and produce all records responsive to [its] request or demonstrate that the requested records are lawfully exempt from production."  Complaint ("Compl.") ¶¶ 11, 16. Currently before the Court are the Defendants' Motion for Summary Judgment ("Defs.' Mot."), ECF No. 13, and the Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 16.  After carefully considering the parties' submissions, the Court concludes for the following reasons that it must grant the defendants' motion for summary judgment and deny the plaintiff's cross-motion for summary judgment.[1]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."); (2) the defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Defs.' Facts"); (3) the Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Opp'n"); (4) the Plaintiff's Response to Defendant's

(continued . . .)

# I.    BACKGROUND[2]

On May 1, 2011, former "President Obama announced to the American people and to the world that the United States has conducted an operation that killed Osama bin Laden, the leader of al Qaeda, and a terrorist who's responsible for the murder of thousands of innocent men, women, and children."  Defs.' Mot., Exhibit ("Ex.") A (Declaration of Antoinette B. Shiner Information Review Officer for the Litigation Information Review Office CIA ("Shiner Decl."))  ¶ 6 (internal quotation marks omitted).  Four and a half years later, the plaintiff submitted identical FOIA requests to the CIA and the DOD, seeking

> [a]ny and all documents, records, and/or communications concerning, regarding, or related to memoranda drafted by Stephen W. Preston, former [CIA] General Counsel; Mary B. DeRosa, former National Security Council Legal Adviser; Jeh C. Johnson, former Pentagon General Counsel; and then-Rear Admiral James W. Crawford III, former Joint Chiefs of Staff Legal Adviser, regarding options, authority, rationale, details, analysis, legal factors, policy concerns, opinions, and conclusions for the search, raid, capture, and/or killing of Osama bin Laden in 2011.  Relevant documents, records, and/or communications include, but are not limited to:
>
> a.  A memorandum written by former Pentagon General Counsel Jeh C. Johnson concerning any violation of Pakistani sovereignty in seeking, capturing, and/or killing Osama bin Laden in 2011;
>
> b.  A memorandum written by former [CIA] General Counsel Stephen W. Preston regarding when the administration must alert congressional leaders about the raid, capture, and/or killing of Osama bin Laden in 2011;
>
> c.  A memorandum written by former National Security Council Legal Adviser Mary B. DeRosa concerning a Navy SEAL team going into a raid with the intention of killing as a default option during the search, raid, capture and/or killing of Osama bin Laden in 2011;
>
> d.  A memorandum written by former National Security Council Legal Adviser

---

(. . . continued)
Statement of Material Facts Not in Dispute and Plaintiff's Statement of Material Facts in Support of Cross-Motion for Summary Judgment ("Pl.'s Facts"); (5) the defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Defs.' Reply"); and (6) the Plaintiff's Reply to Defendants' Opposition to Cross-Motion for Summary Judgment ("Pl.'s Reply").

[2] The Court notes that there is no dispute between the parties as to the facts in this case.

Mary B. DeRosa regarding plans for detaining Osama bin Laden in the event of his capture;

e.  A memorandum written by former Joint Chiefs of Staff Legal Adviser then-Rear Admiral James W. Crawford III regarding options and/or plans for Osama bin Laden's burial.

Compl. ¶ 6.

On February 24, 2016, the plaintiff brought this action alleging that, as of that date, the defendants had not "(i) produce[d] the requested records or demonstrate[d] that the requested records are lawfully exempt from production; (ii) notif[ied] [it] of the scope of any responsive records [the d]efendants intend[ed] to produce or withhold and the reasons for any withholdings; or (iii) inform[ed] [it] that it may appeal any adequately specific, adverse determination." Id. ¶ 9. Early in this litigation, "[the p]laintiff agreed to limit its FOIA request[s] to the five alleged memoranda specifically identified in the FOIA request[s] and in sub-paragraphs 6(a)–(e) of the Complaint," Defs.' Facts ¶ 2; Pl.'s Facts ¶ I.2, and the "[d]efendants agreed to produce releasable portions of the memoranda by or before June 13, 2016," Pl.'s Facts ¶ II.1. "By [a] letter dated June 13, 2016, [the d]efendants informed [the p]laintiff that they had located and finished processing [the] five responsive memoranda[, but] were withholding the five memoranda in their entirety pursuant to FOIA Exemptions 1, 3, and 5 . . . ." Defs.' Facts ¶ 3.

The defendants now move for summary judgment, asserting that they are entitled to judgment as a matter of law because the five requested memoranda are privileged and protected from disclosure under several FOIA Exemptions. See Defs.' Mem. at 3. In addition to opposing the defendants' motion for summary judgment, the plaintiff also cross moves for summary judgment, arguing that the defendants have not satisfied their burden of proving that the FOIA exemptions invoked are applicable to the withheld responsive documents and that the

"[d]efendants should be ordered to release all reasonably segregable, non-classified portions of the memoranda."  Pl.'s Opp'n at 2.

## II.        STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."  Pub. Citizen Health Research Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (alteration in original) (quoting Exxon Corp. v. FTC, 663 F.2d 120, 126–27 (D.C. Cir. 1980)).  If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[I]n ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  Shays v. FEC, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citation omitted).

FOIA cases are typically resolved on motions for summary judgment.  See Ortiz v. U.S.

Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  "[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted).  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents [requested by the FOIA requester] are exempt from disclosure."  Boyd v. U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted).  The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'"  Students Against Genocide, 257 F.3d at 833 (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).

### III.   ANALYSIS

The issue before the Court is whether the defendants have properly withheld the five requested memoranda in their entirety pursuant to Exemptions 1, 3, and 5 of the FOIA. Congress amended the FOIA resulting in its current version in 1966, with the objective of promoting "full agency disclosure."  U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 754 (1989).  When an agency receives a request for records that reasonably

describes such records, the agency must make those records available to the requester.  See id. at 754–55.  Although there are nine expressly delineated exemptions from compelled disclosure, the dominant objective of the act is nonetheless disclosure, not secrecy.  See Dep't of Air Force v. Rose, 425 U.S. 352, 360–61 (1976).  The Supreme Court has explained this basic purpose of the FOIA as providing a way for citizens to "know what their government is up to."  Reporters Comm., 489 U.S. at 773.  Thus, courts must narrowly construe the statutory exemptions when determining if records requested under the FOIA should be disclosed.  See Rose, 425 U.S. at 361.[3]

## A.  FOIA Exemptions

### 1.  Exemption 5

Exemption 5 of the FOIA allows the government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption "has been interpreted as protecting against disclosure [of] those documents normally privileged in the civil discovery context."  Judicial Watch, Inc. v. U.S. Dep't of Justice, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (citing EPA v. Mink, 410 U.S. 73, 91 (1973)).  And, it therefore protects from disclosure those documents shielded by the presidential communications privilege, the deliberative process privilege, see id., and the attorney-client privilege, see Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 252–53 (D.C. Cir. 1977), all three which the defendants here have invoked as a basis for withholding the responsive documents in their entirety under FOIA exemption 5.

---

[3] Upon receiving a FOIA request, an agency must initially conduct an adequate search for responsive documents and can satisfy this threshold burden by "demonstrat[ing] beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  See Boyd v. Exec. Office for U.S. Attorneys, 87 F. Supp. 3d 58, 70 (D.D.C. 2015) (citing cases).  Here, because the plaintiff does not contest whether the defendants have satisfied the search requirement of the FOIA, see generally Pl.'s Mem., the Court need not consider the adequacy of the search conducted by the defendants.

The Court will address the applicability of each of these privileges in turn.

### i. The Presidential Communications Privilege

The defendants first contend that they properly withheld the five memoranda requested by the plaintiff under the presidential communications privilege.  <u>See</u> Defs.' Mem. at 8.  In response, the plaintiff argues that the defendants have not met their burden of demonstrating that the presidential communications privilege applies to the five requested memoranda.  <u>See</u> Pl.'s Reply at 2–4.

It is within "the 'great public interest'" to preserve "'the confidentiality of conversations that take place in the President's performance of his official duties' because such confidentiality is needed to protect 'the effectiveness of the executive decision-making process,' as a result, [the District of Columbia Circuit has] said, presidential conversations 'are presumptively privileged.'"  <u>In re Sealed Case</u>, 121 F.3d 729, 742 (D.C. Cir. 1997) (quoting <u>Nixon v. Sirica</u>, 487 F.2d 700, 717 (D.C. Cir. 1973)).  Therefore, the presidential communications privilege "preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially," <u>Loving v. Dep't of Defense</u>, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting <u>Judicial Watch, Inc.</u>, 365 F.3d at 1112), and "protects 'communications directly involving and documents actually viewed by the President,' as well as documents 'solicited and received' by the President or his 'immediate White House advisers [with] . . . broad and significant responsibility for investigating and formulating the advice to be given the President,'" <u>id.</u> (alterations in original) (quoting <u>Judicial Watch, Inc.</u>, 365 F.3d at 1114).  And, "[t]he privilege covers [those] documents reflecting 'presidential decisionmaking and deliberations,' regardless of whether the documents are predecisional or not, and it covers the documents in their entirety."  <u>Id.</u> (quoting <u>In re Sealed Case</u>, 121 F.3d at 744–45).

The five memoranda requested by the plaintiff were prepared by former President Obama's senior advisors charged with investigating and formulating advice to be provided the President regarding "the raid on Osama bin Laden's compound in Abbottabad, Pakistan," Defs.' Mot., Ex. A (Shiner Decl.) ¶ 7, and reflect presidential decision-making and deliberations, and thus are protected from disclosure under the presidential communications privilege.  To demonstrate that the presidential communications privilege applies to the five memoranda, the defendants have submitted the declaration of Antoinette B. Shiner, the Information Review Officer at the CIA and "a senior CIA official [ ] hold[ing] an original classification authority at the TOP SECRET level."  Id., Ex. A (Shiner Decl.) ¶ 3.  In her declaration, Shiner stated that, "[b]ecause the risks and the potential consequences associated with conducting a raid on Osama bin Laden's compound in Abbottabad, Pakistan were substantial, the President and his national security team considered a number of variables and carefully weighed different options for the operation."  Id., Ex. A (Shiner Decl.) ¶ 7.  The former President's national security team included the "[t]op national security lawyers from the CIA, [the DOD], and the National Security Council [who] formed an integral part of that decision-making process," and who "concentrated on [ ] the law-related issues that the decision-makers would have to decide, the legal issues of which the decision-makers needed to be aware, and lesser issues that needed to be resolved."  Id., Ex. A (Shiner Decl.) ¶ 7.

Furthermore, the five requested memoranda "memorialize the confidential legal advice of those attorneys on certain significant legal aspects of the bin Laden raid."  Id., Ex. A (Shiner Decl.) ¶ 8.  As Shiner explained,

> [t]hese memoranda are not controlling statements of policy that agencies rely upon in discharging their missions.  Rather, the memoranda memorialize legal advice that was briefed to the President and his closest advisors for the purpose of providing an understanding of the legal implications associated with taking certain

courses of action. This advice served as one consideration, among others, weighed by the President and his national security advisors in advance of the President's decision to authorize the raid on bin Laden's compound.

Id., Ex. A (Shiner Decl.) ¶ 8. She also stated that:

[f]or each memorandum, the advice sets forth the factual background relevant to the legal question posed, and analyzes the potential legal consequences of taking a certain course of action in connection with the operation. This advice is not an authorization to conduct a given activity, but, rather, one step in the Executive branch deliberations – i.e., determining legally available options associated with the then-proposed raid.

Id., Ex. A (Shiner Decl.) ¶ 9. Therefore, Shiner concluded that "disclosure of these memoranda would undermine the President's ability to obtain frank and informed opinions from his senior advisors." Id., Ex. A (Shiner Decl.) ¶ 9.

Additionally, the defendants submitted the declaration of Mark H. Herrington, "an Associate Deputy General Counsel in the Office of General Counsel [ ] of the United States [DOD]." Id., Ex. B (Declaration of Mark H. Herrington ("Herrington Decl.")) ¶ 1. In his declaration, Herrington noted that the five requested memoranda contain "information [that] was conveyed to the President's national security advisors in an attempt to influence and inform the formation of the President's decision, and is not a recitation of a final policy, position, or decision." Id. Ex. B (Herrington Decl.) ¶ 6. And, he represents that the five requested memoranda "provide frank and candid opinions of senior government officials, the release of which could chill future deliberations." Id., Ex. B (Herrington Decl.) ¶ 7. The declarations of Shiner and Herrington adequately demonstrate that the five requested memoranda are "documents actually viewed by the President" and concern presidential decision-making and deliberations. Loving, 550 F.3d at 37.

The plaintiff nonetheless offers several arguments for its proposition that the defendants have not met their burden of demonstrating that the presidential communications privilege

applies to the five request memoranda.  Initially, the plaintiff argues that the "[d]efendants do not claim that the authors of the memoranda . . . are senior presidential advisors or that the presidential communications privilege reaches agency counsel."  Pl.'s Reply at 2 (citing Judicial Watch Inc., 365 F.3d at 1108, and In re Sealed Case, 121 F.3d at 752).  Although the top agency lawyers who drafted the five requested memoranda are not "close presidential advisors," Judicial Watch, Inc., 365 F.3d at 1120-21 (holding that the deputy Attorney General and the Attorney General are not "close presidential advisors" whose communications automatically fall within the purview of the presidential communications privilege), the defendants' burden is not limited to demonstrating that the authors are senior presidential advisors; rather, the defendants may satisfy their burden if they are able to show that the five requested memoranda were documents "solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the [documents] relate," In re Sealed Case, 121 F.3d at 752.  Construing the presidential communications privilege "as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected," id., the Court is satisfied that the defendants have met their burden because the five memoranda were solicited and reviewed by former President Obama and his national security team charged with assessing whether the raid on bin Laden's compound should be conducted.

The plaintiff also argues that "the presidential communications privilege protect[s] the 'communicating' of the document[s], not the document[s themselves]."  Pl.'s Reply at 3 ("Whether the memoranda are subject to the presidential communications privilege is a separate issue from whether communications about the memoranda are protected by the privilege. . . . Discussions or descriptions of the document[s] and the fact that the document[s] w[ere] turned

over and reviewed may be privileged, but the document[s themselves] should be produced."). This Circuit has made clear, however, that the presidential communications privilege applies to documents reviewed, solicited, or received by the President or his immediate senior advisors tasked with "broad and significant responsibility for investigating and formulating the advice to be given to the President on the particular matter to which the [documents] relate." In re Sealed Case, 121 F.3d at 752; see also Loving, 550 F.3d at 37 (reiterating that the presidential communications privilege applies to "documents" reviewed, solicited, or received by the President or his immediate senior advisors tasked with "investigating and formulating the advice to be given the President"). As Shiner and Herrington represented in their declarations, the five requested memoranda were solicited, reviewed, and relied upon by the President and his top national security advisors to assist in the determination of whether or not to launch the raid on bin Laden's compound. See Defs.' Mot., Ex. A (Shiner Decl.) ¶¶ 7–9; see also id., Ex. B (Herrington Decl.) ¶ 6. Thus, the Court finds this second argument also unpersuasive.[4]

Finally, the plaintiff contends that allowing the government to withhold the five requested memoranda "would shield from public view the bases for agency counsel's conclusions that the raid was legal," which would create "'secret law' concerning covert military operations" that will be used for "future covert operations." Pl.'s Reply at 4. The plaintiff is correct that FOIA exemption 5 does not protect from disclosure documents that "represent policies, statements or interpretations of law that [an] agency has actually adopted. The purpose of this limitation is to prevent bodies of 'secret law' from being built up and applied by

---

[4] The plaintiff further contends that the defendants' use of the word "'memorialize' to describe the memoranda suggests that the documents were prepared after the briefing, adding further opacity to the claim of privilege." Pl.'s Reply at 4. This argument is similarly unpersuasive as the defendants have clearly demonstrated that the five requested memoranda were solicited and reviewed prior to the President's decision to launch the raid on bin Laden's compound. See Defs.' Mot., Ex. A (Shiner Decl.) ¶¶ 7–9.

government agencies." Schwartz v. IRS, 511 F.2d 1303, 1305 (D.C. Cir. 1975); see also Ctr. for

Effective Gov't v. U.S. Dep't of State, 7 F. Supp. 3d 16, 29–30 (D.D.C. 2013) (noting that "the

[District of Columbia] Circuit has concluded that Congress indicated unequivocally that the

purpose of [FOIA] was to forbid secret law" such as a "final, non-classified, communication

[that] is widely distributed within the Executive Branch and implemented by lower-level staff

members in a manner similar to any other agency statement of policy that is presumptively

subject to disclosure under FOIA." (citations and internal quotation marks omitted)).  However,

as the Court previously noted, the five requested memoranda "are not controlling statements of

policy that agencies rely upon in discharging their missions[,]" but rather, constitute "legal

advice that was briefed to the President and his closest advisors for the purpose of providing an

understanding of the legal implications associated with taking certain courses of action."  Defs.'

Mot., Ex. A (Shiner Decl.) ¶ 8.  And, because "the secrecy of the operation, and the legal advice

associated with it, was of paramount concern and was closely held within the top ranks of the

administration[,] . . . the confidentiality of these [documents] continues to be maintained and has

not been disseminated beyond the parties."  Id., Ex. A (Shiner Decl.) ¶ 8.  Based on the

representations provided by the defendants' declarant, the Court concludes that the five

requested memoranda are not controlling statements of policy and that the withholding of these

documents from disclosure would not create a body of secret law in direct contravention of the

FOIA.

    In sum, the five requested memoranda were not only prepared for the purpose of advising

the President and his closest national security advisors on the legality of the specific military

operation of raiding bin Laden's compound, but also were solicited, reviewed, and formed an

integral part of the President's decision to launch the raid.  Thus, the presidential

communications privilege applies to the five requested memoranda.  Accordingly, the defendants' properly withheld the five memoranda in their entirety from disclosure under the presidential communications privilege.

### ii.  The Deliberative Process Privilege

The deliberative process privilege protects "confidential intra-agency advisory opinions" and "materials reflecting deliberative or policy-making processes."  Judicial Watch, Inc., 365 F.3d at 1113 (citing Mink, 410 U.S. at 86).  The purpose of this privilege is to protect the decision making processes of government agencies.  See id.; see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975).  Unlike the presidential communications privilege, which covers both final post-decisional and pre-decisional materials, the deliberative process privilege protects all executive branch officials but covers only pre-decisional materials.  See Judicial Watch, Inc., 365 F.3d at 1113–14.  If disclosure of the requested documents "is required under the presidential privilege, it will certainly be required under the deliberative process privilege."  In re Sealed Case, 121 F.3d at 746.  Thus, the Court "would need to address the application of [the] deliberative process privilege as to any document only if [it] determine[s] that the withheld document[s are] not subject to the presidential privilege."  Id.  Therefore, because the Court has determined that the presidential communications privilege shields from disclosure the five requested memoranda, the Court need not engage in an in-depth analysis of whether the deliberate process privilege applies.

### iii.  The Attorney-Client Privilege

"In the context of Exemption 5, 'the [attorney-client] privilege . . . functions to protect communications between government attorneys and client agencies or departments, as evidenced by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the

private sector.'" Cuban v. S.E.C., 744 F. Supp. 2d 60, 78 (D.D.C. 2010) (Walton, J.) (alterations

in original) (quoting In re Lindsey, 158 F.3d 1263, 1269 (D.C. Cir. 1998)).  Therefore, "when

'the Government is dealing with its attorneys as would any private party seeking advice to

protect personal interests, and needs the same assurance of confidentiality so it will not be

deterred from full and frank communications with its counselors,' [E]xemption [5] applies."  In

re Lindsey, 158 F.3d at 1269 (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d

854, 863 (D.C. Cir. 1980)).  "To invoke the [attorney-client] privilege, an agency must

demonstrate that the document it seeks to withhold (1) involves 'confidential communications

between an attorney and his [or her] client' and (2) relates to 'a legal matter for which the client

has sought professional advice.'"  Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252,

267 (D.D.C. 2004) (quoting Mead Data Cent., Inc., 566 F.2d at 252); see also Coastal States Gas

Corp., 617 F.2d at 862 ("[The attorney-client] privilege protects only those disclosures necessary

to obtain informed legal advice which might not have been made absent the privilege." (citation

and internal quotation marks omitted)).

    "However, the attorney-client privilege does not give the agency the ability 'to withhold a

document merely because it is a communication between the agency and its lawyers."  Cuban,

744 F. Supp. 2d at 78 (quoting Judicial Watch, Inc., 297 F. Supp. 2d at 267).  Rather, "[t]he

agency must show that the information provided to its lawyers was intended to be confidential

and was not disclosed to a third party."  Id.; see also Coastal States Gas Corp., 617 F.2d at 863

("The burden is on the agency to demonstrate that confidentiality was expected in the handling

of these communications, and that it was reasonably careful to keep this confidential information

protected from general disclosure.").  Moreover, "[c]onclusory assertions of privilege will not

suffice to carry the agency's burden."  Senate of Puerto Rico ex rel. Judiciary Comm. v. U.S.

Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (citation and internal quotation marks omitted); see also Cuban, 744 F. Supp. 2d at 79 (noting that the agency's declarations must provide "more than conclusory assertions and blanket affirmations . . . from which the Court can assess whether the attorney-client privilege was properly asserted").

The defendants assert that "[t]he five memoranda fall squarely within the attorney-client privilege's protection of 'confidential communications between an attorney and his client' related to a 'legal matter for which the client has sought professional advice.'"  Defs.' Reply at 3 (quoting Mead Data Cent., Inc., 566 F.2d at 252).  In response, the plaintiff argues that the defendants have not satisfied their burden of demonstrating the applicability of the attorney-client privilege because they "make no showing that disclosure of the memoranda would reveal facts communicated in confidence to the authors for purposes of obtaining legal advice."  Pl.'s Reply at 5 ("[The defendants] make generalized statements about the existence of facts in the memoranda, but they fail to address the source of these facts or assert that disclosure of the advice would reveal facts communicated in confidence to the authors by the authors' client(s) for purposes of obtaining legal advice.").

The Court agrees with the defendants that the five requested memoranda are shielded from production based on the attorney-client privilege.  To demonstrate the applicability of the attorney-client privilege, the defendants initially noted that the attorneys are the authors of the five requested memoranda who provided confidential legal advice to their clients, "the President and his closet advisors."  Defs.' Mot., Ex. A (Shiner Decl.) ¶ 11.  The defendants also revealed the subject matter and a broad overview of the facts related to each memoranda.  See id., Ex. A (Shiner Decl.) ¶ 5(a)–(e) (noting that the five requested memoranda pertain to "any violation of Pakistani sovereignty in seeking, capturing and/or killing Osama bin Laden;" "when the

administration must alert congressional leaders about the raid, capture, and/or killing of Osama

bin Laden;" "a Navy SEAL team going into a raid with the intention of killing as a default option

during the search, raid, capture and/or killing of Osama bin Laden;" "plans for detaining Osama

bin Laden in the event of his capture;" and "options and/or plans for Osama bin Laden's

burial."); see also id., Ex. B (Herrington Decl.) ¶ 3(a)–(e).  The defendants further state that

"[f]or each memorandum, the advice sets forth the factual background relevant to the legal

question posed, and analyzes the potential legal consequences of taking a certain course of action

in connection with the operation."  Id., Ex. A (Shiner Decl.) ¶ 9; see also id., Ex. A (Shiner

Decl.) ¶¶ 6–7 (noting that the five requested memoranda focused on "the law-related issues that

the decision-makers would have to decide, the legal issues of which the decision-makers needed

to be aware, and lesser issues that needed to be resolved.  By the time the force was launched, the

[United States] Government had determined with confidence that there was clear and ample

authority for the use of force, including lethal force, under [United States] and international law

and that the operation would be conducted in complete accordance with applicable [United

States] and international legal restrictions and principles.").

         Moreover, the five requested memoranda served as "legal advice that was briefed to the

President and his closet advisors for the purpose of providing an understanding of the legal

implications associated with taking certain courses of action."  Id., Ex. A (Shiner Decl.) ¶ 8.

Underlying the five requested memoranda were

> the secrecy of the operation, and the legal advice associated with it, [which were]
> of paramount concern and [were] closely held within the top ranks of the
> administration.  [ ] [A]though certain details of the raid have been acknowledged,
> the confidentiality of these [five memoranda] continues to be maintained and has
> not been disseminated beyond the parties.

Id., Ex. A (Shiner Decl.) ¶ 8.  And, according to the defendants, "[d]isclosure of legal advice,

such as this, would diminish the quality of legal representation provided by government attorneys because clients would be reluctant to freely and accurately communicate factual information, questions, or concerns for fear that those discussions would be publicly disclosed." Id., Ex. A (Shiner Decl.) ¶ 11.

Notwithstanding the declarations submitted by the defendants, the plaintiff contends that the defendants have not identified the source of the confidential facts or even alleged that producing the five memoranda "would reveal facts communicated in confidence." Pl.'s Reply at 5. Although the Court disagrees, the Court notes that the plaintiff's contention, if accepted, would heighten the defendants' burden beyond what is required. As mentioned above, the defendants bear the burden of "show[ing] that the information provided to [their] lawyers was intended to be confidential and was not disclosed to a third party," Cuban, 744 F. Supp. 2d at 78, as well as the information their lawyers provided in response, a standard the Court finds they have sufficiently satisfied. Accordingly, because the defendants have provided more than conclusory statements regarding the legal advice requested, the nature of the confidential information provided in response, and the need to preserve the confidentiality of the content of that information in the five memoranda, the Court concludes that the defendants have sufficiently demonstrated the applicability of the attorney-client privilege to the five requested memoranda.

## 2.  Exemption 3

Exemption 3 of the FOIA excludes from compelled disclosure matters that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The applicability of Exemption 3 "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007). A statute falls under

the purview of Exemption 3 only if it "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." Id. Here, the defendants invoke Section 102A(i)(1) of the National Security Act of 1947 (the "National Security Act"), as amended (now codified at 50 U.S.C. § 3024(i)(1)), which "requires the Director of National Intelligence to 'protect intelligence sources and methods from unauthorized disclosure.'" Defs.' Mem. at 15; see also CIA v. Simms, 471 U.S. 159, 167 (1985) (holding that the National Security Act "qualifies as a withholding statute under Exemption 3").

The burden is on the agency to justify the withholding of requested information, and "[t]he agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed." King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987). And, "the court owes substantial weight to detailed agency explanations in the national security context." Id.; see Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) (noting "that courts have little expertise in either international diplomacy or counterintelligence operations"). Although "[i]t is particularly important to protect intelligence sources and methods from public disclosure," Morley, 508 F.3d at 1126, the agency has the "obligation to identify the 'particularized harm that could be expected to occur from production of the requested information,'" id. at 1125 (quoting Church of Scientology of Cal., Inc. v. Turner, 662 F.2d 784, 785 (D.C. Cir. 1980)).

The plaintiff contends that the "secrecy provisions of the National Security Act . . . only allow secrecy for intelligence sources and methods," whereas the information it has requested "does not logically fall within the category of intelligence activities, sources, or methods, which are protected by statute." Pl.'s Opp'n at 11 ("[The p]laintiff does not seek classified operational

information, only non-exempt legal justifications and factual information.").  The plaintiff also argues that the defendants have not met their burden because "Ms. Shiner's declaration provides little more than a description of the legal standards for classification and a thread-bare assurance that the contents of the memoranda include such information."  Pl.'s Opp'n at 12; see also id. at 11 ("Defendants may not simply provide declarations that fail to adequately explain why certain information – legal, opinion, analysis – is categorized as a national security secret.").  The Court disagrees with the plaintiff's characterization of the Shiner declaration and its position that the defendants have not satisfied their burden of showing that the five memoranda requested are not exempt from disclosure under Exemption 3.

In her declaration, Shiner indicated that the five requested memoranda contain "discrete information" that "fit within classification categories of sections 1.4(c) (intelligence sources, methods and activities) and 1.4(d) (foreign relations or activities)" of the National Security Act's secrecy provisions.  Defs.' Mot., Ex. A (Shiner Decl.) ¶ 12.  In addition, Shiner "determined that disclosure of this information could reasonably be expected to harm national security because it would reveal classified intelligence activities, sources and methods associated with counterterrorism operations in a foreign country."  Id., Ex. A (Shiner Decl.) ¶ 12.  Considering these representations from the perspective of the entire declaration submitted by Shiner in conjunction with Herrington's declaration, the Court does not find, as the plaintiff contends, that the defendants' declarations are conclusory thread-bare recitals of the legal standards with respect to Exemption 3.  As the Court previously noted, the defendants' declarations note, among other things, that the five requested memoranda concerned "the risks and the potential consequences associated with conducting a raid on Osama bin Laden's compound" and the "legal advice that was briefed to the President and his closest advisors for the purpose of

providing an understanding of the legal implications associated with taking certain courses of action." Id., Ex. A (Shiner Decl.) ¶ 8.  The Shiner declaration also references the need for non-disclosure of the memoranda resulting from the memoranda having been imparted to the President who was "formulating a decision on a sensitive operation with substantial foreign policy impacts." Id., Ex. A (Shiner Decl.) ¶ 9.  Considering the totality of the representations made by the defendants' declarants and the substantial weight that courts must afford agencies in the national security context, see Dillon v. Dep't of Justice, 102 F. Supp. 3d 272, 287 (D.D.C. 2015) (Walton, J.), the Court concludes that the defendants have sufficiently demonstrated the need to protect from disclosure classified, discrete information contained within the five requested memoranda that identifies intelligence sources and methods, see Defs.' Mot., Ex. A (Shiner Decl.) ¶ 12, and therefore, Exemption 3 applies.[5]

### 3.   Exemption 1

Exemption 1 of the FOIA excludes materials that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1); see also CIA v. Sims, 471 U.S. at 183.  The defendants invoke Executive Order 13,526, which allows information to be withheld when the "original classification authority has

---

[5] The defendants assert that "[defendant] CIA stands ready, at the Court's request, to provide a classified declaration ex parte, in camera to address the withheld information in greater depth."  Defs.' Reply at 6.  Because courts have recognized that in camera review is considered a "last resort," Henderson v. Office of Dir. of Nat'l Intelligence, 151 F. Supp. 3d 170, 180 (D.D.C. 2016); see also Mead Data Cent., Inc., 566 F.2d at 262, and because the Court has concluded that the defendants' declarations provided details sufficient to show the applicability of Exemption 3, the Court finds it unnecessary to require the submission of such a declaration for in camera inspection.  Additionally, the plaintiff contends that "[t]he Court should order production of the [five memoranda] for in camera inspection . . . [, which] will allow the Court to determine whether any privileges attach to the [five m]emoranda."  Pl.'s Opp'n at 14.  In its broad discretion, see Mead Data Cent. Inc., 566 F.2d at 262 n.59 ("[T]he choice [of] whether to conduct in camera inspection should be left to the discretion of the district courts."), the Court also finds it futile to conduct an in camera review of the five memoranda because the defendants have met their burden of demonstrating that the several FOIA exemptions invoked are applicable to the five requested memoranda.

determined . . . [that the] 'unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security.'"  Defs.' Mem. at 12 (quoting Exec. Order 13,526 § 1.4, 75 Fed. Reg. 707, 709 (Dec. 29, 2009)).  Specifically, the defendants contend that the five requested memoranda pertain to "intelligence activities (including covert action), intelligence sources or methods, or cryptology" and "foreign relations or foreign activities of the United States, including confidential sources."  Defs.' Mem. at 13; see also Exec. Order 13,526 § 1.4(c)–(d).

Similar to the circumstances underlying the applicability of Exemption 3, the defendants have demonstrated that the five requested memoranda contain classified, confidential information that are protected from production by Exemption 1.  Consistent with its stance with respect to the defendants' withholding of the five requested memoranda pursuant to Exemption 3, the plaintiff argues that the defendants have not met their burden because the Shiner Declaration is merely conclusory.  See Pl.'s Opp'n at 12.  But, as the Court has already observed, the defendants have indicated that "disclosing the information would reveal the sources and method of underlying intelligence collection."  Defs.' Mem. at 13; see also Shiner Decl. at ¶ 12.  Additionally, the information in the five requested memoranda "involves a contemplated [United States] Government operation in Pakistan, and [the] legal analysis attendant to such an operation in a foreign country," which "necessarily implicates foreign activities within the meaning of the Executive Order."  Defs.' Mem. at 13.  Consequently, for the same reasons underlying its ruling regarding Exemption 3, see supra Part III.A.3, the Court finds that the defendants properly withheld the classified, confidential information contained within the five requested memoranda from production under Exemption 1 pursuant to Executive Order 13,526.

**B. Segregability**

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed <u>unless</u> they are inextricably intertwined with exempt portions." <u>Wilderness Soc'y v. U.S. Dep't of Interior</u>, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.) (quoting <u>Mead Data Cent., Inc.</u>, 566 F.2d at 260). "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." <u>Mead Data Cent. Inc.</u>, 566 F.2d at 260.

A district court's determination that agency records are exempt from disclosure under the FOIA is subject to remand if the court does not also make specific findings on the question of segregability. <u>See</u> <u>Krikorian v. Dep't of State</u>, 984 F.2d 461, 467 (D.C. Cir. 1993) (remanding case back to district court because no specific findings of segregability were made). To make this determination, the district court must be provided with a "relatively detailed description" of the withheld material. <u>Id.</u> (citing <u>Goldberg v. U.S. Dep't of State</u>, 818 F.2d 71, 78 (D.C. Cir. 1987). Agencies must review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether "the result would be an essentially meaningless set of words and phrases." <u>See</u> <u>Mead Data Cent., Inc.</u>, 566 F.2d at 261 (stating result of meaningless set of words may be sufficient to claim that the information is not segregable). A "document-by-document" review and a declaration that each piece of information that is withheld is not reasonably segregable is sufficient to show that an entire document cannot be produced. <u>See</u> <u>Juarez v. U.S. Dep't of Justice</u>, 518 F.3d 54, 61 (D.C.

Cir. 2008); Beltranena v. U.S. Dep't of State, 821 F. Supp. 2d 167, 178–79 (D.D.C. 2011).

Here, the Court is satisfied that the defendants have conducted a proper segregability analysis and may withhold the five requested memoranda in their entirety.  The plaintiff argues that the "[d]efendants have the burden of showing why disclosable discussion of legal principles in [the] memoranda cannot be segregated from operational data" and that the "[d]efendants' declarations offer conclusory statements that information is not segregable are inadequate to meet its burden."  Pl.'s Opp'n at 13.  However, the defendants assert that they "conducted a document-by-document and line-by-line review and determined that no segregable, non-exempt portions of the[ ] [five] memoranda can be released without potentially compromising privileged information."  Defs.' Mot., Ex. A (Shiner Decl.) ¶ 13; see also id., Ex. B (Herrington Decl.) ¶ 9 (providing "confirm[ation] that there is no reasonably segregable information, factual or otherwise, contained in" the memoranda reviewed and "[w]ith regard to the arguably non-deliberative facts in the documents, such information cannot be disclosed because it is inextricably intertwined with the deliberative parts of the memoranda.").  Thus, given the details the defendants' declarants provide regarding the five requested memoranda, coupled with the defendants' assertion that there is no segregable information within the five requested memoranda, the Court is convinced that the defendants' performed a proper segregability analysis, resulting in the withholding of the entire content of the five requested memoranda.

Moreover, under Exemption 5, the presidential communications privilege safeguards from disclosure documents in their entirety to which the privilege applies.  See In re Sealed Case, 121 F.3d at 745 ("[T]he presidential communications privilege applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones."); see also Judicial Watch, Inc., 365 F.3d at 1124 (directing the district court on remand to review a set

a documents to determine whether the presidential communications privilege applies, and for those documents not protected by the presidential communications privilege, requiring the district court to consider the agency's obligation "to disclose all reasonably segregable, nonexempt portions of the documents").  Therefore, having found that the five requested memoranda are protected from disclosure by the presidential communications privilege under Exemption 5, and because the Court is satisfied that the defendants conducted a line-by-line review of the memoranda and determined that there is no segregable information, the Court concludes that the defendants properly withheld the five requested memoranda in their entirety.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment and deny the plaintiff's cross-motion for summary judgment.

**SO ORDERED** this 28th day of March, 2017.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.